IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRUCE M. MOELLER,

          Petitioner,                No. CIV S-01-2351 FCD JFM P

       vs.

BILL LOCKYER, et al.,

          Respondents.          <u>ORDER</u>

_____/

       Petitioner, presently admitted to bail, is proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On May 25, 1999, petitioner pled no contest to one count of possession of narcotics for sale (Cal. Health & Safety Code § 11351) (cocaine).  (Clerk's Transcript ("CT") at 145.)  Petitioner claims he was deprived of his Sixth Amendment right to counsel and to a public trial, and that his due process rights were violated, *inter alia,* by the trial court's use of an *in camera* hearing on petitioner's motions to disclose the identity of the informant (CT 38-45), to quash or traverse the search warrant (CT 46-50) and to unseal the affidavit in support of the search warrant (CT 51-76), held pursuant to <u>People v. Hobbs</u>, 7 Cal.4th 948 (1994).  Neither petitioner nor his defense lawyer were allowed to attend the *in camera* hearings held under <u>Hobbs</u>.

1

1   The substance of the Constitution's guarantee of the effective
2   assistance of counsel is illuminated by reference to its underlying
    purpose.  "[T]ruth," Lord Eldon said, "is best discovered by
    powerful statements on both sides of the question." [Footnote
3   omitted.] This dictum describes the unique strength of our system
    of criminal justice.  "The very premise of our adversary system of
4   criminal justice is that partisan advocacy on both sides of a case
    will best promote the ultimate objective that the guilty be convicted
5   and the innocent go free." [Citation and footnote omitted.]  It is
    that "very premise" that underlies and gives meaning to the Sixth
6   Amendment. [Footnote omitted.]  It "is meant to assure fairness in
    the adversary criminal process."

7

8   United States v. Cronic, 466 U.S. 648, 655 n.12, 104 S.Ct. 2039 (1984)

9          The United States Supreme Court has revisited its prior holding in Cronic, albeit

10  in the context of defense counsel appearing at a plea hearing by speaker phone.  Wright v. Van

11  Patten, _____ U.S. _____, 128 S. Ct. 743 (2008).  The Supreme Court reiterated:

12          Cronic held that a Sixth Amendment violation may be found
            "without inquiring into counsel's actual performance or requiring
13          the defendant to show the effect it had on the trial," Bell v. Cone,
            535 U.S. 685, 695, 122 S.Ct. 1843 . . . (2002), when
14          "circumstances [exist] that are so likely to prejudice the accused
            that the cost of litigating their effect in a particular case is
15          unjustified," Cronic, supra, at 658, 104 S.Ct. 2039.  Cronic, not
            Strickland, applies "when . . . the likelihood that any lawyer, even a
16          fully competent one, could provide effective assistance is so small
            that a presumption of prejudice is appropriate without inquiry into
17          the actual conduct of the trial," 466 U.S., at 659-660, 104 S.Ct.
            2039,[1] and one circumstance warranting the presumption is the
18          "complete denial of counsel," that is, when "counsel [is] either
            totally absent, or prevented from assisting the accused during a
19          critical stage of the proceeding," id., at 659, and n.25, 104 S.Ct.
            2039.

20

21  Wright, 128 S.Ct. at 746.  As set forth below, this court finds that petitioner was completely

22  deprived of assistance of counsel when defense counsel was excluded from numerous *in camera*

23

24          [1] Cronic also applies when "there [is] a breakdown in the adversarial process," 466 U.S.,
    at 662, 104 S.Ct. 2039, such that "counsel entirely fails to subject the prosecution's case to
25  meaningful adversarial testing," id., at 659, 104 S.Ct. 2039. We have made clear that "[w]hen we
    spoke in Cronic of the possibility of presuming prejudice based on an attorney's failure to test the
    prosecutor's case, we indicated that the attorney's failure must be complete." Bell v. Cone, 535
26  U.S. 685, 696-697, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

1   review hearings relevant to petitioner's motion to suppress, a critical stage of the proceeding.

2   This denial was absolute despite one instance where defense counsel was permitted to submit

3   questions for the judge to pose to the confidential informant, a form of shadow boxing with the

4   search warrant affidavit that prevented counsel from assisting the accused during a critical stage

5   of the proceeding.  The exclusion of petitioner's counsel was, at a minimum, a denial of

6   petitioner's Sixth Amendment right to counsel.  This court recommends that the petition for writ

7   of habeas corpus be granted.

8                                          FACTS[2]

9           Based on information from a confidential informant, a search
            warrant was issued to search the home of [petitioner] Bruce
10          Moeller.  Pursuant to the search warrant, the officers found
            approximately one-quarter pound of cocaine, two pounds of
11          methamphetamine, and over $69,000 in cash.  After his various
            motions to suppress evidence were denied, [petitioner] pleaded no
12          contest to one count of possession of cocaine for sale.  (Citation
            omitted.)

13

14   (People v. Moeller, slip op. at 1.)

15                              STATE COURT PROCEEDINGS

16           On February 25, 1998, a search warrant was executed at petitioner's home.

17   Officers found two pounds of methamphetamine, one-quarter pound of cocaine, $66,040 in

18   currency and a shotgun.  (CT 69-71.)  The affidavit in support of the search warrant contained

19   allegedly privileged information provided to the police by a confidential informant (CI).  (Evid.

20   Code, §§ 1041-1042.)  The judge who signed search warrant No. 2043, ordered the entire

21   affidavit sealed to protect the identity of the confidential informant.  (CT 40; 59.)

22   /////

23   /////

24

25           [2]  The facts are taken from the opinion of the California Court of Appeal for the Third
     Appellate District in People v. Moeller, No. C032909 (July 31, 2000), a copy of which is
26   attached as Exhibit B to Respondents' Answer, filed February 6, 2003.

Defense counsel moved to unseal the warrant. A second judge held an *in camera* hearing. (CT 40.)[3] After the *in camera* proceeding, the judge provided petitioner with a partially unsealed affidavit on June 26, 1998. (CT 40; see CT 61-72.) Defense counsel moved again to have the affidavit unsealed. (CT 40.) On July 23, 1998, the same judge ordered additional portions of the affidavit to be unsealed. (CT 40; see CT 73-75.) On July 29, 1998, defense counsel asked that all of the argument, rulings and sealed *in camera* proceedings relevant to the search warrant be part of the preliminary hearing record, and that was also done. (CT 40.)

On August 25, 1998, by information, petitioner was charged with two counts of possession of narcotics for sale (Cal. Health & Safety Code § 11351 (cocaine), § 11378 (methamphetamine), and with being armed with a firearm during a narcotics felony (Cal. Penal Code § 12022(c).) (CT 10-12.)

On December 1, 1998, defense counsel moved to disclose the identity of the confidential informant. (CT 38-45.) Counsel also moved to quash and traverse and unseal the affidavit. (CT 46-50; 51-76.) Defense counsel stated that a review of the unsealed portions of the affidavit demonstrated that all information relevant to probable cause remained sealed. (CT 41.) Defense counsel argued that unless the probable cause portions of the affidavit were unsealed, petitioner could not fully litigate a motion to reveal the identity of the informant (CT 41) or a motion to traverse the search warrant (CT 49, 54).

Defense counsel appended a copy of those portions of the search warrant that had been unsealed and provided to her. (CT 62-68; 74-75)

On December 7, 1998, the prosecution filed its response to petitioner's motion to unseal the affidavit. (CT 77.) In its motion, the prosecution stated that:

/////

---

[3] There are no minutes reflecting the date of this *in camera* hearing, and no record of who attended. (CT begins with the filing of petitioner's waiver of preliminary hearing, filed August 13, 1998.) This *in camera* hearing is not at issue herein.

- • when the search warrant was executed, petitioner was the sole occupant of the residence.
- • approximately one pound of methamphetamine and a quarter pound of cocaine was found in petitioner's bedroom.
- • another pound of methamphetamine, three loaded handguns, a loaded shotgun, petitioner's birth certificate and passport, and $69,040 in cash were found in a safe in a closet.
- • petitioner was in possession of the key that opened the closet holding the safe and petitioner opened the safe upon request of the officers.
- • petitioner "admitted selling of the drugs and stated he was unemployed."

(CT 78.)  The prosecution argued that the CI was not a material witness on the issue of guilt or innocence.  (CT 80.)  The prosecution further argued that because the petitioner was charged with possession for sale crimes, and a large quantity and high quality of drugs were found in petitioner's possession and petitioner admitted to the officers he sold the drugs, any contest as to the intent to sell would be precluded, and that the petitioner's right to a fair trial did not require the identity of the CI to be revealed.  (CT 81.)

On May 11, 1999, the superior court held an *in camera* hearing.  (CT 139.)  The *in camera* hearing was attended by a third judge, the deputy district attorney, and a supervisor of the affiant.  (RT 4.)  Petitioner and his attorney were excluded from the *in camera* hearing.  (Petition at 2; RT 4.)  Petitioner's counsel, however, was allowed to propound questions to be asked *in camera*.  (Petition at 3; RT 4.)  The court confirmed that the CI did not request to have his name kept confidential; rather, the affiant's supervisor stated that they inform the informants that it is their policy to keep their identities confidential.  (RT 7.)  The transcript of the hearing was sealed.  (CT 139.)

On May 25, 1999, the third judge held an open hearing on petitioner's motions. (CT 140-42; RT 1-31.)  Petitioner and his defense counsel were present, along with the

5

prosecution.  (Id.)  Defense counsel argued that through discovery it was determined that another

individual lived at the residence and that during the search of the residence marijuana was found

in and about the other individual's belongings.  (RT 12.)  Counsel stated that the other individual

owns the home and that individual had equal access to the various areas of the home, and that

there was cohabitation between petitioner and this other individual.  (RT 12.)  Counsel argued

that those facts could be used to "suggest that there may be information that revelation of the

informant's identity could provide that would suggest that perhaps [petitioner] did not exercise

dominion and control over the items seized and that an informant might provide some

information."  (RT 12.)  Counsel contended that

> the revelations of the identity of the informant could potentially
> show that the other individual who lived in the house exercised
> control over [petitioner] and therefore, that there was a relationship
> where [petitioner] was subject to that other individual's power and
> that might relate to whether or not [petitioner] actually exercised
> dominion and control over any contraband that he appeared to be in
> possession of.

(RT 12-13.)

Defense counsel argued strenuously that her client's due process rights had been

violated by the sealing of this information, and that he was deprived of his right to counsel

because counsel was not provided information to enable her to effectively move to quash,

traverse or unseal the affidavit or to reveal the identity of the informant.  (RT 14-16.)  Defense

counsel argued that good defense lawyers look beyond the four corners of the search warrant and

do their own separate investigation and often hire private investigators to investigate facts

contained in affidavits in order to effectively challenge search warrants.  (RT 17.)  She contended

that the Hobbs procedure essentially placed the judge in defense counsel's shoes without benefit

of critical research, investigation or an advocate's perspective.

The prosecution reiterated the factual support cited in his response to the motion

to unseal the affidavit.  (RT 19; see also CT 78.)  The prosecution stated that at the time of the

search, "there was no individual who was present other than [petitioner]."  (RT 19.)  The

prosecution also pointed out that three separate judges had reviewed the sealed material, and one of the judges had reviewed the affidavit twice.  (RT 20-21.)

Following argument, the third judge admitted he did not investigate the facts, did not send an investigator out to check the officer's background and did not read the police reports. (RT 26.)  However, the judge stated he tried to look at the sealed documents in the way a defense attorney would and asked questions of the officer based on the judge's "combined experiences of reading, signing, reviewing and ruling on search warrants for the last 15 years."  (RT 26.)  The judge stated he "strictly reviewed the affidavit itself and questioned the officer, which [he thought was] the Hobbs obligation here."  (RT 26.)  The judge continued:

> I've tried to look at the four corners here and determined there really isn't much argument on the traversal because I've given you nothing and there's really nothing you can traverse.  You can't put much evidence because you don't have much of a clue as to the nature of the comments the CI made.
>
> So really mostly my responsibility has been in looking at the search warrant itself to determine if there's materially false statements or insufficient probable cause.  And as I mentioned, I can't see that.  In fact, the reason I can't see it is because the evidence is so strong with regard to probable cause.  It's the same strong evidence that leads me to believe that this particular informant's information, if told, would reveal his or her identity.
>
> I guess the motion to disclose the informant then is denied based on those findings.  I think this informant was not present at the time, as far as I know.  I think I did ask that question.  I don't believe the informant was present at the time the search warrant was executed.  And so it's a pointing of the finger situation and not a percipient witness situation.  That's the facts that arise when Mr. Moeller is arrested and the search warrant that give rise to the possession allegations here.  And I don't see anything in the search warrant to lead me to believe the informant did anything other than point the finger.

(RT 27.)  The court then denied petitioner's motions to traverse or quash the search warrant and the motion to reveal the identity of the CI.  (RT 27-28.)

Petitioner filed a timely appeal.  The Court of Appeal reviewed the sealed materials, including the entire affidavit and the questions defense counsel submitted to the

7

1   superior court for the *in camera* hearing.  (<u>People v. Moeller</u>, slip op. at 8.)  The state appellate

2   court found that

3           the superior court made the appropriate inquiries and findings
            pursuant to *Hobbs*, and that there [was] substantial evidence to

4           support those findings.  (See 7 Cal.4th at pp. 972-975.)  Based on
            this review, [the court] conclude[s] that it was not reasonably

5           probable that [petitioner] could prevail on his motions to traverse
            or quash the search warrant, unseal the search warrant affidavit, or

6           disclose the identity of the CI.  (<u>Id</u>. at p. 977.)

7   (<u>People v. Moeller</u>, slip op. at 8.)  The state appellate court also found that the California

8   Supreme Court in <u>Hobbs</u> "determined implicitly that the procedure it outlined does not offend the

9   Sixth Amendment right to counsel."  (<u>People v. Moeller</u>, slip op. at 6.)  Because the trial court

10  expressly used the <u>Hobbs</u> procedure, the appellate court found the trial court did not deprive

11  petitioner of his right to counsel.  (<u>People v. Moeller</u>, slip op. at 6.)  The appellate court noted

12  that petitioner's counsel conceded that the <u>Hobbs</u> court explicitly rejected the theory that its

13  procedures violated due process, but petitioner sought to preserve the due process claim for

14  subsequent review.  (<u>People v. Moeller</u>, slip op. at 8.)  Finally, the appellate court found

15  petitioner had waived his public trial claim because it had not been made in the trial court, and

16  overruled petitioner's futility argument.  (<u>People v. Moeller</u>, slip op. at 6-8.)

17          Petitioner filed a petition for review in the California Supreme Court on

18  September 7, 2000.  (Answer, Ex. C.)  The petition was denied on October 18, 2000.  (Answer,

19  Ex. D.)

20                              THE INSTANT RECORD

21          In addition to the petition, answer and traverse, counsel for respondents has

22  lodged certain sealed documents from the state court proceedings.  On September 12, 2005, the

23  police report was filed under seal.  Also, on September 12, 2005, the search warrant and

24  supporting affidavit were filed under seal.  On September 13, 2005, the reporter's transcript from

25  the May 11, 1999 *in camera* hearing held in state court was also filed under seal.

26  /////

                                        8

ANALYSIS

I.  <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result.  <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

1   reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

2   habeas court independently reviews the record to determine whether habeas corpus relief is

3   available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

4   II.  Petitioner's No Contest Plea

5           Neither party contends that petitioner's no contest plea waived his right to raise

6   constitutional challenges to the Hobbs procedures used herein.[4]  On this record,[5] such a claim

7   would be unavailing.  Cf. Mitchell v. Superior Court, 632 F.2d 767, 771-73 (9th Cir. 1980).

8   III.  The Hobbs Procedure

9           The state appellate court described the Hobbs procedure:

10          In *Hobbs*, our state high court concluded that a major portion of a
            search warrant affidavit, or even the entire affidavit, may validly be
11          sealed to protect the identity of a confidential informant if a certain
            procedure is followed to preserve the defendant's right to challenge
12          the warrant's legality.  (7 Cal.4th at pp. 955, 957, 971-975.)

13          In a nutshell, the procedure set forth in *Hobbs* is as follows.  On a
            properly noticed defense motion to quash or traverse a search
14          warrant, the trial court should conduct an *in camera* hearing.  (7
            Cal.4th at p. 972.)  In that hearing, the court first determines
15          whether sufficient grounds exist for keeping the informant's
            identity confidential.  If so, the court then determines whether the

16

17          [4] However, counsel for respondents argue that petitioner's challenge is limited to the
    procedural aspects of the suppression and not an attack on the trial court's determination of
18  probable cause.  (Answer at 8, n.4.)  "To the extent Petitioner is attempting to challenge the trial
    court's substantive ruling on the suppression motion in this federal habeas action, Petitioner's
19  claim is prohibited.  *See Stone v. Powell*, 428 U.S. 465 (1976)."  (Answer at 8, n.4.)

20          [5] It appears petitioner preserved his constitutional challenge by referencing his appeal in
    the section setting forth the terms of his plea agreement.  (CT at 145.)  In addition, at the change
21  of plea hearing, the judge stated he would be willing to issue a certificate of probable cause
    because petitioner "would be entitled to that no matter what.  That's the reason why this issue's
22  being preserved pursuant to his plea."  (RT 32.)  After entry of petitioner's plea, defense counsel
    sought confirmation, and the court confirmed, that petitioner was being provided the right to
23  appeal the rulings the court made with respect to Hobbs on the discovery motion, motion to
    suppress, motion to traverse and motion to disclose the identity of the CI.  (RT 36.)

24          As noted in Hobbs, Cal. Penal Code § 1538.5(m) allows a defendant to seek appellate
    review of the validity of a search or seizure after a conviction in a criminal case notwithstanding
25  the fact that the judgment of conviction is based on a plea of guilty or no contest.  Id.  Thus,
    where a defendant's challenge to the sealing of an affidavit is directed to the legality of the
26  search, it is cognizable on appeal according to that statutory exception.  Hobbs, 7 Cal.4th at 956.

1
2

entire search warrant affidavit, or any major portion of it, must remain sealed to avoid revealing that identity.  (*Ibid.*)

3
4
5
6
7
8
9

If the trial court determines that the affidavit needs to remain sealed in this way, it then examines the affidavit *in camera* for possible inconsistencies or insufficiencies regarding the showing of probable cause, and informs the prosecution of the materials or witnesses it requires for its examination; these materials will invariably include such items as relevant police reports and other information regarding the informant and the informant's reliability. (7 Cal.4th at p. 973.)  The trial court may find it necessary to question this affiant, the informant, or other witnesses to rule upon these issues.  (*Ibid.*)  The prosecutor may be present at the *in camera* explanation, but defendant and his counsel are excluded. Defense counsel, however, may submit written questions that shall be asked by the trial judge of any witness called to testify at the proceeding.  (*Ibid.*)

10    (People v. Moeller, slip op. at 3-4.)[6]

11    IV.  Petitioner's Claims

12         a.  Deprivation of Sixth Amendment Right to Counsel

13         Petitioner contends that the Hobbs procedure used by the trial court on petitioner's

14    motions to disclose the confidential informant, to quash or traverse the search warrant and to

15    unseal the supporting affidavit excluded his attorney from participation in the hearing on the

16    motions and thereby deprived him of his right to counsel guaranteed by the Sixth Amendment.

17    (Petition at 6.)  Because this was a violation of his fundamental right to counsel, petitioner argues

18    that it was structural error requiring reversal without harmless error analysis.  Brecht v.

19    Abrahamson, 507 U.S. 619, 629-30 (1993).  Petitioner argues that:

20

21
22
23
24
25
26

[6]  California Supreme Court Justice Mosk dissented in Hobbs, stating: "A search warrant containing no information other than the address of a home to be searched. Not a word as to what the government seeks to discover and seize.  ¶  A government informer, his-or, indeed, her-identity kept secret from the suspect, the suspect's counsel, and the public.  ¶  Both the suspect and counsel barred from a closed proceeding before a magistrate. No record of the proceeding given to the suspect or counsel.  ¶  Based entirely on the foregoing, a court order approving an unrestricted search of the suspect's home.  ¶  Did this scenario occur in a communist dictatorship? Under a military junta? Or perhaps in a Kafka novel? No, this is grim reality in California in the final decade of the 20th century."  Hobbs, 7 Cal.4th at 978.  Justice Mosk found that the procedures used in Hobbs violated the right to due process under Crane v. Kentucky, and the right to counsel under the Sixth Amendment.  Id. at 981.

[t]he United States Supreme Court "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.  See e.g., Geders v. United States, 425 U.S. 80 (1976); Herring v. New York, 422 U.S. 853 (1975); Brooks v. Tennessee, 406 U.S. 605, 612-613 (1972); Hamilton v. Alabama, 368 U.S. 52, 55 (1961); White v. Maryland, 373 U.S. 59, 60 (1963)(per curiam); Ferguson v. Georgia, 365 U.S. 570 (1961); Williams v. Kaiser, 323 U.S. 471, 475-476 (1945)." United States v. Cronic, 466 U.S. 648, 659 (1984).  While a showing of prejudice is required under Strickland v. Washington, 466 U.S. 668 (1984), when a defendant claims that his "counsel's legal assistance. . . was so inadequate that it effectively deprived the client of the protections guaranteed by the Sixth Amendment," Perry v. Leeke, 488 U.S. 272, 278 (1989), the High Court has held that a showing of prejudice is not required when the state interferes with defense counsel's representation.  Id. at 280.  Thus, "actual or constructive denial of the assistance of counsel altogether [citation], is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective."  Id.

(Petr.'s Mem. Ps & As, at 12-13.)

Respondents argue that this claim was properly rejected by the California Supreme Court because the state court's reasoning was not an unreasonable application of, or contrary to, clearly established United States Supreme Court precedent.  (Answer at 8.)

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  Id.  The right to counsel attaches "at or after the initiation of adversary criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information or arraignment."  Kirby v. Illinois, 406 U.S. 682, 688-89 (1972).  The right to counsel also extends to every critical stage of the criminal prosecution.  Coleman v. Alabama, 399 U.S. 1, 7 (1970); Hamilton v. Alabama, 368 U.S. 52, 53-54 (1961).  Counsel "is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected."  Mempha v. Rhay, 389 U.S. 128, 134 (1967).  This includes the right to be personally present and to be represented by counsel at critical stages during the prosecution.  United States v. Wade, 388 U.S. 218, 224-25 (1987).

/////

The right to counsel is also guaranteed at suppression hearings.  See United States v. Hamilton, 391 F.3d 1066 (9th Cir. 2004)(""[i]t is quite clear that a pretrial motion to suppress evidence is a critical stage of the prosecution requiring the presence of counsel for the accused," because in many cases the crucial issue is the admissibility of evidence found in the defendant's possession. Olney v. United States, 433 F.2d 161, 163 (9th Cir.1970) (internal quotation marks omitted).")

Under the applicable Supreme Court standards, no presumption arises unless the failure of counsel is complete.  See Bell v. Cone, 535 U.S. 685, 697, 122 S.Ct. 1843 (2002); United States v. Cronic, 466 U.S. 648, 658-59, 104 S.Ct. 2039 (1984).  This was recently restated by the Supreme Court in Wright v. Van Pattan, ___ U.S. ___, 128 S.Ct. 743, 747 (2008):

> Cronic, not Strickland, applies "when . . . the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial," 466 U.S., at 659-660, 104 S.Ct. 2039 [footnote omitted] and one circumstance warranting the presumption is the "complete denial of counsel," that is, when "counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," id., at 659, and n.25, 104 S.Ct. 2039.

Wright, 128 S.Ct. at 747.

Furthermore, the constructive denial of counsel in light of that counsel's inability to properly represent the defendant is also prohibited by the Sixth Amendment.  Strickland, 466 U.S. 668, 692 (1984).  "[S]uppression hearings often are as important as the trial itself. . . .  In . . . many cases, the suppression hearing [is] the only trial, because the defendants thereafter plead guilty pursuant to a plea bargain."  See Waller v. Georgia, 467 U.S. 39, 46-47 (1984) (Supreme Court considered whether the Sixth Amendment's guarantee of a public trial proscribed the closure of a seven day long suppression hearing, concluding that the pretrial hearing was part of the public trial contemplated by the Constitution).

When a petitioner demonstrates that a trial error has been committed, the district court will reverse only if "the error 'had [a] substantial and injurious effect or influence in

1   determining the jury's verdict.'"   Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)(quoting

2   Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  However, when petitioner demonstrates

3   a "structural defect[ ] in the constitution of the trial mechanism," such as denial of a right to

4   counsel, the court is required to reverse without regard to the evidence in the particular case.

5   Sullivan v. Louisiana, 113 S.Ct. 2078, 2082-83 (1993) ("structural defects" in state trial not

6   subject to harmless error analysis upon habeas review) (internal quotations omitted); see Rose v.

7   Clark, 478 U.S. 570, 577 (1986) (complete denial of right to counsel among constitutional errors

8   that require reversal on habeas review without regard to the evidence in the particular case).

9          The state appellate court addressed this claim as follows:

10         As the People note in their briefing, the state Supreme Court made
           clear in *Hobbs* that it had considered the fact that defense counsel
11         would be excluded from direct participation in the *in camera*
           proceedings; this fact inheres in the ex parte, *in camera* procedure
12         that *Hobbs* outlined.  (See 7 Cal.4th at pp. 957, 963-964, 969-973.)
           *Hobbs* dealt specifically with the concern that trial judges "'may or
13         may not have the legal sophistication to recognize the nuances of
           criminal procedure absent the assistance and vigorous advocacy'"
14         of defense counsel – by placing its faith in the judges.  (*Id.* at pp.
           970-971.)  *Hobbs*, moreover, talked generally of "preserv[ing] the
15         defendant's right to challenge the warrant's legality."  (*Id.* at pp.
           956, 957, 967.)  *Hobbs*, therefore, contemplated in its decision this
16         fact of (direct) defense counsel exclusion.

17         Furthermore, *Hobbs* found the decision in *People v. Castillo*
           (1992) 80 N.Y.2d 578 [607 N.E.2d 1050] "particularly
18         instructive," and quoted at length from that opinion.  (7 Cal.4th at
           p. 967.)  In *Castillo*, New York's highest court rejected the
19         defendant's claim that "'a suppression procedure conducted
           without his participation violate[d] his constitutional right to due
20         process *and the effective assistance of counsel*.'"  (*Id.* at p. 968,
           quoting *Castillo, supra,* 607 N.E.2d at p. 1051, italics added.)

21
           *Hobbs* quoted *Castillo's* reasoning and observations in this regard,
22         including:

23         "'Analysis starts by focusing on the nature of the proceeding for
           there is a fundamental difference between a trial to adjudicate guilt
24         or innocence and a pretrial hearing to suppress evidence. . . .  The
           very purpose of a motion to suppress is to escape the inculpatory
25         thrust of evidence in hand, not because its probative force is
           diluted in the least by the mode of seizure, but rather as a sanction
26         to compel [law] enforcement officers to respect the constitutional

                                          14

1    security of all of us under the Fourth Amendment . . . . [Citations.]
     [¶] . . . [A] defendant's interest in availing himself of the
2    exclusionary rule may, in exceptional circumstances, be
     subordinated to safety precautions necessary to encourage citizens
3    to participate in law enforcement. . . . [I]n order to protect the
     confidentiality of the informant . . . [we have] sanctioned a
4    procedure whereby a significant aspect of the inquiry on the motion
     to suppress is conducted by the court on defendant's behalf,
5    without the defendant's direct participation. . . . [Where
     appropriate, such a procedure can be utilized even where] *none* of
6    the purported factual predicates for probable cause was revealed to
     defendant.'" (7 Cal.4th at p. 968, quoting *Castillo, supra,* 607
7    N.E.2d at pp. 1052-1053; italics added in *Hobbs*.)

8    Thus, we conclude that the court in *Hobbs* determined implicitly
     that the procedure it outlined does not offend the Sixth
9    Amendment right to counsel. Since the trial court used this
     procedure in ruling on [petitioner's] suppression motions, the trial
10   court did not deprive [petitioner] of his right to counsel.

11   (People v. Moeller, slip op. at 5-6.)

12       In the instant action, the right to counsel had attached because the motions at issue

13   were filed after the filing of the complaint and preliminary examination in municipal court and

14   after the filing of the information and arraignment in superior court. (CT 1-16.)

15       Defense counsel was barred from attending all the *in camera* hearings held here.

16   Only the judge, the prosecution and the witness were allowed to attend. The trial court used the

17   Hobbs procedure and held an *in camera* proceeding where the supervisor of the affiant who

18   executed the search warrant was questioned. However, defense counsel was allowed to submit

19   questions to the judge to be posed to the witness during one *in camera* proceeding.

20       Defense counsel strenuously objected and the trial judge admitted he was not

21   acting as a defense attorney, that he had not read the underlying police report or conducted any

22   investigation. (RT 31.) The trial judge tried to view the documents as a defense attorney and ask

23   its own questions of the officer based upon his "combined experiences of reading, signing,

24   reviewing and ruling on search warrants for the last 15 years." (RT 26.) However, as petitioner

25   points out, the trial judge is precluded from the practice of law by Canon 4(G) of the Cal. Code

26   /////

                                          15

1   of Judicial Ethics, and would be automatically disqualified from hearing a case if the judge

2   served as a lawyer or gave legal advice to a party.  Cal. Code Civ. Proc. Section 170.1(a)(2).

3      Respondents acknowledge petitioner's right to counsel, but argue that the

4   government has a limited privilege to withhold the identity of a confidential informant.  Roviaro

5   v. United States, 353 U.S. 53 (1957).

> The scope of the privilege is limited by its underlying purpose.
> Thus, where the disclosure of the contents of a communication will
> not tend to reveal the identity of an informer . . . the privilege is no
> longer applicable.  [¶]  A further limitation on the applicability of
> the privilege arises from the fundamental requirements of fairness.
> Where the disclosure of an informer's identity, or of the contents of
> his communication, is relevant and helpful to the defense of an
> accused, or is essential to a fair determination of a cause, the
> privilege must give way.  In these situations the trial court may
> require disclosure and, if the Government withholds the
> information, dismiss the action.

12   Roviaro, 353 U.S. 60-61.  Respondents point out that "it has never been held to require the

13   disclosure of an informant's identity at a suppression hearing."  McCray v. Illinois, 386 U.S. 300

14   (1967).

15      Petitioner objects to the court's consideration of either Roviaro or McCray on this

16   claim because both were based entirely on Fifth Amendment due process challenges; neither

17   raised Sixth Amendment challenges.  Petitioner further distinguishes Roviaro because the motion

18   in Roviaro was made at trial, where the defendant was fully represented by counsel.  There were

19   no in camera proceedings from which defense counsel was barred.  Petitioner argues that

20   McCray did not involve an exclusion of counsel; in fact, defense counsel was permitted to

21   participate in the hearing and cross-examine the witnesses.  Id.

> [T]he arresting officers . . . testified, in open court, fully and in
> precise detail as to what the informer told them and as to why they
> had reason to believe his information was trustworthy.  Each
> officer was under oath.  Each was subjected to searching cross-
> examination.

25   /////

26   /////

1    McCray, 386 U.S. at 313.  Finally, petitioner distinguishes United States v. Raddatz, 447 U.S.

2    667 (1980), where the defendant was fully represented at the hearing before the magistrate and

3    was permitted to cross-examine all the witnesses.  Id.

4            Petitioner's distinctions are well-taken.  Respondent has failed to provide any

5    authority countering petitioner's view that complete deprivation of assistance of counsel at a

6    critical stage of the proceeding violates the Sixth Amendment right to counsel, constituting

7    reversible error.

8            Here, although petitioner was represented by counsel, counsel was prevented from

9    performing her duties to her client because the trial court refused her attendance at the *in camera*

10   hearings which prevented her from bringing a viable motion to suppress because she was not

11   privy to the underlying probable cause evidence, even after multiple efforts to gain access to such

12   evidence.

13              In Geders, Herring, Glasser, and Powell, defense counsel were
                appointed but were prevented from discharging functions vital to
14              effective representation of their clients.  In Geders, defense counsel
                was not permitted to confer with his client during an overnight
15              mid-trial recess. In Herring, a state statute barred final summation
                by defense counsel.  In Glasser, counsel was forced to represent
16              two defendants with conflicting interests, impairing his ability to
                fully serve either.  In Powell, counsel was denied an adequate
17              opportunity to confer with the defendant or prepare for trial.
                Reversal is automatic in such cases for reasons discussed in
18              Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d
                426 (1978).  In Holloway, as in Glasser, defense counsel was
19              required to serve defendants probably having conflicting interests.
                The court said, "The mere physical presence of an attorney does
20              not fulfill the Sixth Amendment guarantee when the advocate's
                conflicting obligations have effectively sealed his lips on crucial
21              matters." Id. at 490, 98 S.Ct. at 1182. When no counsel is
                provided, or counsel is prevented from discharging his normal
22              functions, the evil lies in what the attorney does not do, and is
                either not readily apparent on the record, or occurs at a time when
23              no record is made. "Thus an inquiry into a claim of harmless error
                here would require, unlike most cases, unguided speculation," Id.
24              at 491, 98 S.Ct. at 1182, and a rule requiring that the record reflect
                that the defendant was "prejudiced . . . in some specific fashion
25              would not be susceptible to intelligent, even handed application."

26   /////

17

1           Id. at 490, 98 S.Ct. at 1182.[7] This situation is to be distinguished
     from the usual one in which a harmless error rule is applied: "In the
2    normal case where a harmless error rule is applied, the error occurs
     at trial and its scope is readily identifiable. Accordingly, the
3    reviewing court can undertake with some confidence its relatively
     narrow task of assessing the likelihood that the error materially
4    affected the deliberations of the jury." Id. at 490, 98 S.Ct. at 1182.

5    Cooper v. Fitzharris, 586 F.2d 1325, 1332 (9th Cir. 1978).

6           Although for one hearing, petitioner's counsel was allowed to submit questions,

7    such questions were formed in a vacuum without any material information from the affidavit to

8    assist counsel in formulating the questions.  Petitioner could be of little assistance to counsel for

9    the same reason.  While maintaining the identity of a confidential informant is important, such a

10   concern should not outweigh or trump a criminal defendant's Sixth Amendment right to counsel

11   at a critical stage of the proceeding.  Indeed, the protections offered a confidential informant are

12   qualified and should give way to a criminal defendant's fundamental right to counsel under the

13   Sixth Amendment.

14          Moreover, relying on the trial judge to assume the role of defense counsel is

15   unethical as well as ineffective.  The trial judge is precluded from the practice of law by Canon

16   4(G) of the Cal. Code of Judicial Ethics, and would be automatically disqualified from hearing a

17   case where "the judge served as a lawyer in the proceeding" or "gave advice to any party in the

18   present proceeding upon any matter involved in the action or proceeding."  Cal. Code Civ. Proc.

19   Section 170.1(a)(2).  Trial judges are not privy to defense strategies, criminal discovery,

20   investigation, nor all the facts of a criminal case such that they can serve as an effective defense

21   attorney in any event.  Leaving the in camera hearing to the trial judge and the prosecution

22   /////

23   /////

24   /////

25

26      [7] See also, Herring v. New York, 422 U.S. 853, 863, 95 S.Ct. 2550 (1975); Glasser v.
     United States, 315 U.S. 60, 75- 76, 62 S.Ct. 457 (1942).

1  deprives petitioner of an advocate who can ensure that proper challenges are considered and that

2  the defense's position is effectively argued.[8]

3         This court cannot find that on the one occasion defense counsel was permitted to

4  craft questions which the judge posed, purportedly on counsel's behalf, could serve as cross-

5  examination or effective assistance of counsel.  As noted by the state court judge, defense

6  counsel had no facts on which to formulate appropriate questions.  Moreover, the judge

7  questioned the supervisor of the affiant, not the affiant or the confidential informant.  In addition,

8  it does not appear that the confidential informant was identified at the *in camera* hearings or to

9  any of the judges reviewing the search warrant.  Defense counsel could not rebut prosecution

10 evidence she was not allowed to see.

11        The denial of counsel at a suppression hearing is analogous to the denial of

12 counsel at an *in camera* hearing held to assess the validity of a Fifth Amendment assertion.  Cf.

13 United States v. Bohn, 890 F.2d 1079 (9th Cir. 1989).  "The validity of Bohn's assertion of the

14 fifth amendment was the key issue in the entire case."  Id. at 1081.  Thus, the *in camera* stage

15 was "at least as critical as the trial itself," because if the assertion was valid, Bohn could not be

16 convicted.  Here, the entire case hinged on the issue of probable cause.  The Bohn court

17 concluded:

18        because Bohn was denied his sixth amendment right to have
          counsel present at the in camera hearing, we may not engage in
19        harmless error analysis.

20 Id. at 1082.  Here, petitioner was denied his Sixth Amendment right to have counsel present at

21 the *in camera* hearings, and the court should not be required to engage in a harmless error

22 analysis.

23 _____

24        [8]  The trial judge here conceded as much.  The judge admitted he did not represent
   petitioner as a competent defense attorney would have.  The judge stated he did not read the
   police reports or conduct any investigation.  The judge did not act as "a good defense attorney

25 who's pounding away at the facts of the case and developing inconsistencies into some of them.
   I don't think the Supreme Court really had that in mind for me to do.  And I don't believe I did

26 that."  (RT 31.)

1       Both Hobbs and the People v. Castillo case upon which Hobbs relied place great

2    weight on the distinction between the testing of guilt or innocence at trial versus the context of a

3    motion to suppress where, they contend, the "very purpose . . . is to escape the inculpatory thrust

4    of the evidence in hand."  People v. Castillo, 80 N.Y.2d 578, 583, 607 N.E.2d 1050 (1992).

5    However, on the facts of this case, neither defense counsel nor the court knew whether any

6    Fourth Amendment violation had occurred because there was no testing of the reliability of the

7    informant, nor of the facts underlying the finding of probable cause.  The untested finding of

8    probable cause in this case sealed petitioner's fate and left him with no option but to plead out.

9    In that sense, petitioner was facing a critical stage of the proceeding and required the assistance

10   of counsel, as well as more due process than one round of questions drafted in a vacuum.

11       In many criminal cases, as in the instant case, the issue of probable cause is the

12   only issue available to the defense.  And, if there were no probable cause for the warrant, the

13   warrant would be suppressed and the case against petitioner would be thrown out.  The critical

14   nature of the probable cause inquiry here requires the assistance of counsel.  Certainly there are

15   methods by which the court can accomplish this without allowing the criminal defendant to

16   become aware of the CI's identity.  For example, defense counsel could be allowed to attend the

17   in camera hearing, without the defendant, and be ordered not to divulge the identity of the CI to

18   the defendant.  As an officer of the court, defense counsel must comply.  Or, the CI could appear

19   by telephone and his or her voice could be altered so that no one could identify the voice.

20       This court finds that the Hobbs procedure, as applied to petitioner, violated

21   petitioner's Sixth Amendment right to counsel at a critical stage of the proceeding.  The state

22   court's determination that the Hobbs court implicitly found no Sixth Amendment violation is an

23   unreasonable application of prevailing United States Supreme Court authority and is objectively

24   unreasonable.  Criminal defendants have a fundamental right to assistance of counsel at all

25   critical stages of the proceedings.

26   /////

Because the denial of the Sixth Amendment right to counsel at a crticial stage of the proceeding is not subject to harmless error analysis in this context, <u>Sullivan</u>, 113 S.Ct. at 2082-83; <u>Rose</u>, 478 U.S. at 577, <u>Bohn</u>, 890 F.3d at 1082, this claim should be granted.[9]

However, even if this court were to apply <u>Brecht</u>, this court's decision would not change.

Judge Noonan has asked "whether the deprivation of the assistance of counsel [at an *in camera* hearing] was harmful to petitioner." <u>See Bradley v. Henry</u>, 510 F.3d 1093, 1098 (9th Cir. 2007)(en banc)[10] (Judge Noonan found that holding *in camera* hearing, with present and potential new counsel present, without petitioner's knowledge or presence, denied her right to the assistance of counsel). Judge Noonan noted that the "key questions [are] as to whether [counsel] should pursue a plea bargain or whether Bradley should take the stand at trial." <u>Id.</u> Judge Noonan found that "the *in camera* hearing without petitioner present denied her right to the assistance of counsel." <u>Id.</u>

---

[9]  Other courts have held that error pertaining to a defendant's absence from certain stages of the criminal proceedings--even stages deemed "critical"--was subject to a harmless error analysis. <u>See Rushen v. Spain</u>, 464 U.S. 114, 117-119, 104 S.Ct. 453 (1983) (trial judge's ex parte communication with a juror); <u>Campbell v. Rice</u>, 408 F.3d 1166, 1171-1172 (9th Cir.2005) (defendant's exclusion from a chambers conference during trial); <u>Hegler v. Borg</u>, 50 F.3d 1472 (9th Cir.1995) (defendant's absence during the re-reading of trial testimony to the jury); <u>Rice v. Wood</u>, 77 F.3d 1138 (9th Cir. 1996) (defendant's absence when the jury returned its verdict). However, those cases are factually distinguishable from the instant case; none of them addressed the issue of denial of counsel in challenging probable cause at a suppression hearing.

[10]  Because the plurality opinion in <u>Bradley</u> was joined by only five members of the eleven-judge en banc panel, Judge Clifton's concurring opinion represents the holding of the court. <u>See Bradley v. Henry</u>, 518 F.3d 657, 2008 WL 540360, at *1 (9th Cir. Feb.29, 2008) (amending on denial of rehearing opinion of Clifton, J.) (citing <u>Marks v. United States</u>, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (holding that when "no single rationale explaining the result enjoys the assent" of a majority of justices, the holding "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds") (citation omitted)). Judge Clifton concurred in the judgment reversing the denial of Bradley's habeas petition, but "based it upon the denial by the trial court of Bradley's January 1999 motion, filed more than six weeks before the then-scheduled trial date, to substitute retained counsel Jonathan Jordan for the attorney previously appointed by the court to represent her, Chris Andrian." (<u>Id.</u> at 1099.) Judge Clifton concluded "that the subsequent decision by the California Court of Appeal to affirm Bradley's conviction despite that denial of her motion to substitute was an unreasonable application of established Supreme Court precedent." <u>Id.</u>

1    Such a key question was presented here and, had defense counsel been provided

2    with an opportunity to represent petitioner in the *in camera* hearings, defense counsel could have

3    provided petitioner with advice as to whether he should pursue a plea bargain, go to trial, or, if he

4    went to trial, whether he should take the stand.

5    "[W]hen a federal judge in a habeas proceeding is in grave doubt about whether a

6    trial error of federal law had 'substantial and injurious effect or influence in determining the

7    jury's verdict,' that error is not harmless.  And, the petitioner must win."  O'Neal v. McAninch,

8    513 U.S. 432, 436 (1995); Coleman v. Calderon, 210 F.3d 1047 (9th Cir. 2000).  Here, the

9    suppression hearing is a critical stage of the proceeding and will often determine whether counsel

10   pursues a plea bargain or recommends a criminal defendant go to trial and will also influence the

11   recommendation as to whether the defendant takes the stand.  These decisions implicate grave

12   constitutional concerns which justify an unimpeded right to counsel.  A complete deprivation of

13   counsel at this critical stage of the proceeding is, by definition, harmful to a criminal defendant as

14   such representation is required by the United States Constitution.

15        b.  Deprivation of Due Process

16   Petitioner next claims the Hobbs procedure wrongly deprived petitioner of the

17   right to present a defense, the right to be heard, and the right to subject the prosecution case to

18   adversarial testing, all in violation of his due process rights under the Fourteenth Amendment.

19   Respondents argue that this claim was properly rejected by the California Supreme Court because

20   the state court's reasoning was not an unreasonable application of, or contrary to, clearly

21   established United States Supreme Court precedent.

22   Criminal defendants have a constitutional right, implicit in the Sixth Amendment,

23   to present a defense; this right is "a fundamental element of due process of law."  Washington v.

24   Texas, 388 U.S. 14, 19 (1967).  See also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("[T]he

25   Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete

26   defense.'")  "[A]n essential component of procedural fairness is an opportunity to be heard."

1  Crane, 476 U.S. at 690, citing In re Oliver, 333 U.S. 257, 273 (1948); Grannis v. Ordean, 234

2  U.S. 385, 394 (1914).  Meaningful adversarial testing is required.  See Crane, 476 U.S. at 690.

3          The United States Supreme Court has held "when the issue is . . . probable cause

4  for an arrest or search, . . . police officers need not invariably be required to disclose an

5  informant's identity if the trial judge is convinced, by evidence submitted in open court and

6  subject to cross-examination, that the officers did rely in good faith upon credible information

7  supplied by a reliable informant."  McCray v. Illinois, 386 U.S. 300 (1967).

8          Similarly, a criminal defendant's interest in testing the validity of a search warrant

9  through a Franks[11] hearing is not absolute and must be balanced with other competing interests.

10 See United States v. Napier, 436 F.3d 1133 (9th Cir. 2006)(district court properly balanced

11 Napier's rights with the government's competing interests in determining that the sealed portions

12 of the affidavit should remain sealed).  This requires a balancing of the defendant's need to

13 challenge the veracity of the affidavit with the prosecution's interest in confidentiality.  See

14 United States v. Kiser, 716 F.2d 1268, 1271 (9th Cir. 1983); United States v. Napier, 436 F.3d

15 1133, 1136-36 (9th Cir. 2006).  Petitioner must still come forward with specific allegations that

16 indicate which portions of the affidavit he believes are false, accompanied by a detailed offer of

17 proof, in order to meet the preliminary showing requirement.  Kiser, 716 F.2d at 1271-72

18 (citations omitted).  If such a showing has been made, the trial court then has the discretion to

19 hold confidential proceedings, including *ex parte* or *in camera* hearings, but petitioner must be

20 given some opportunity to carry his burden to show that the material in the affidavit is untrue.  Id.

21 at 1273-74.

22         Moreover, this circuit has held that interrogation of the informant by the court is

23 an appropriate means of accommodating the due process interests of the defendant and the

24 government's concern for the safety of the informer.  See United States v. Anderson, 509 F.2d

25 _____

26   [11] Franks v. Delaware, 438 U.S. 154, 155-56 (1978) (substantial preliminary showing
   required to obtain an evidentiary hearing to test the validity of a search warrant affidavit).

1  724, 730 (9th Cir.), <u>cert. denied</u>, 420 U.S. 910 (1975) (*in camera* hearing closed to defendant and

2  his attorney was not an abuse of discretion and the procedure did not infringe defendant's rights

3  under the Fifth and Sixth Amendments).  "Through disclosure of the informant's identity to the

4  trial judge, and such subsequent inquiries by the judge as may be necessary, the Government can

5  be protected from any significant, unnecessary impairment of necessary secrecy, yet the

6  defendant can be saved from what could be serious police misconduct."  <u>See</u> <u>United States v.</u>

7  <u>Moore</u>, 522 F.2d 1068, 1073 (9th Cir. 1975), <u>cert denied</u>, 423 U.S. 1049 (1976).  <u>See also</u> <u>U.S. v.</u>

8  <u>De LaRosa-Contreras</u>, 849 F.Supp. 388, 390-92 (D. Ariz. 1994) (discussion of various ways

9  federal courts address *in camera* hearings regarding confidential informants).  However, federal

10  courts do not extend the informant's privilege to shield all the material facts making probable

11  cause in a warrant.  <u>See</u>, <u>e.g.</u>, <u>United States v. Cummins</u>, 912 F.2d 98, 99 (6th Cir. 1990); <u>United</u>

12  <u>States v. Moore</u>, 522 F.2d 1068, 1072 (9th Cir. 1975); <u>United States v. Rivera</u>, 738 F.Supp. 1208,

13  1211-12 (N.D. Inc. 1990); <u>United States v. Barker</u>, 623 F.Supp. 823, 836 (D. Colo. 1985).

14       The state appellate court essentially denied this claim, relying on the express

15  ruling of <u>Hobbs</u>.

16       In the instant case, the judge refused to unseal any portion of the affidavit that

17  would disclose facts or circumstances that would enable petitioner to file a motion to traverse the

18  warrant because it would result in the identification of the confidential informant.  The judge

19  stated:

20       I've tried to look at the four corners here and determined there
     really isn't much argument on the traversal because I've given you
21       nothing and there's really nothing you can traverse.  You can't put
     [on] much evidence because you don't have much of a clue as to
22       the nature of the comments the CI made.

23       So really mostly my responsibility has been in looking at the
     search warrant itself to determine if there's materially false
24       statements or insufficient probable cause.  And as I mentioned, I
     can't see that.  In fact, the reason I can't see it is because the
25       evidence is so strong with regard to probable cause.  It's the same
     strong evidence that leads me to believe that this particular
26       informant's information, if told, would reveal his or her identity.

(RT 27.)

However, one judge did allow defense counsel to submit written questions which the judge then posed to the witness in one of the *in camera* proceedings.

Our circuit has peripherally addressed this question in the context of whether a criminal defendant's habeas claims were barred by procedural default.  Insyxiengmay v. Morgan, 403 F.3d 657 (9th Cir. 2005)("Insyxiengmay I").[12]  On direct appeal, the Washington Court of Appeals found that Insyxiengmay's Sixth Amendment rights were violated by the exclusion of the defense from the *in camera* hearing.  The district court dismissed Insyxiengmay's habeas petition, however, "because petitioner [] failed to show [the confidential informant] had any information pertinent to petitioner's case."  Id.  However, the Court of Appeals for the Ninth Circuit found the record contained facts that gave rise to a clear inference that the informant had material information and the district court should have granted Insyxiengmay an evidentiary

---

[12]  Insyxiengmay was one of three youth charged with attacking four high school teens who egged his gang's hangout.  Insyxiengmay and his gang members grabbed a rifle, jumped into a car, chased the teens, eventually shooting and killing the teen driver and front seat passenger.  Both Insyxiengmay and his gang member, Misaengsay, claimed a fourth person in the car was the shooter, until police falsely told Misaengsay that Insyxiengmay had stated Misaengsay was the shooter; then Misaengsay accused Insyxiengmay of being the shooter.  The third gang member in the car, Ngoeung, was arrested later based upon information provided by a confidential informant.

During pretrial motions, the prosecutor revealed it was a confidential informant who led to Ngoeung's arrest, and that the informant was a passenger in one of the two cars stopped during Ngoeung's arrest.  Arresting deputy Cassio's report regarding Ngoeung's arrest falsely stated Cassio was on routine surveillance when he found Ngoeung's car, when in fact he had received a phone call from one of the people in one of the cars traveling with Ngoeung.  The prosecutor refused to identify the informant and defense counsel moved for disclosure.  The judge held an *in camera* hearing at which only deputy Cassio testified.  "The judge barred defense counsel from the hearing, refused to take his written questions so that they could be read to the witness by the court, did not compel the confidential informant to appear at the hearing, and issued a protective order prohibiting defense counsel from discussing the existence of the confidential information with Insyxiengmay and his co-defendant."  Insyxiengmay, 403 F.3d at 662.

During the *in camera* hearing, the judge did not ask Cassio what information the informant had given him regarding the shootings or whether he had any information that could be helpful to the defense.  The court asked only whether the informant had been present at the gang house during the time the murder occurred.  After the hearing, the judge stated the informant could not provide any information that would assist the defense.  Insyxiengmay was ultimately convicted for first degree murder.

1   hearing.  The Court of Appeals went on to find that Insyxiengmay had not failed to develop the

2   factual basis for his Sixth Amendment claim in state court because he and his counsel were

3   barred from the *in camera* hearing and defense counsel had been prohibited from even telling

4   Insyxiengmay about the existence of an informant.  The Court of Appeals remanded the case for

5   an evidentiary hearing on the issue of prejudice.

6              On remand, the Insyxiengmay court held an evidentiary hearing on the question of

7   prejudice resulting from the Sixth Amendment constitutional violation.  Insyxiengmay v.

8   Morgan, 2006 WL 223748 (W.D.Wash.) ("Insyxiengmay II").  During the evidentiary hearing,

9   the Insyxiengmay II court heard evidence and argument, including testimony of Kuong Prak,

10  Bryan Hershman, and William Cassio, and exhibits were introduced.  Id.  Upon conclusion of the

11  evidentiary hearing, the Insyxiengmay II court issued findings of fact and found that even if the

12  court determined that the state court decision was either an unreasonable application of or

13  contrary to Supreme Court precedent, it must still apply the Brecht harmless error analysis.

14  Insyxiengmay II, at *15, citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  The

15  Insyxiengmay II court ultimately held that "although the defense investigation was

16  unconstitutionally impeded, [Insyxiengmay] [had] not shown that the error had a substantial and

17  injurious effect or influence in determining the jury's verdict."  Id. at 15.  The Ninth Circuit

18  affirmed that decision, finding the "state trial court's exclusion of Insyxiengmay and his counsel

19  from the *in camera* hearing did not actually prejudice him."  Insyxiengmay v. Morgan, 2007 WL

20  2409422 (9th Cir. 2007)("Insyxiengmay III").  The court stated:

21              It is unclear whether Insyxiengmay would have testified if he had
             known that Prak would testify that Insyxiengmay had told him that
22           he was not the shooter. Furthermore, even if Prak's statement that
             Detective Cassio told him that Misaengsay had confessed to being
23           the shooter were admissible, it would not have affected the verdict
             because the jury had to find only that Insyxiengmay was an
24           accomplice, and because of the other substantial evidence of
             Insyxiengmay's participation in the homicides, as discussed above.

25

26  Insyxiengmay III, 2007 WL 2409422, at *2.

26

1    <u>Insyxiengmay</u> I, II & III demonstrate that in the context of a case involving a

2    confidential informant, the court will inquire into the sealed information to determine whether

3    petitioner has been prejudiced by his inability to view the information or have his attorney attend

4    the *in camera* proceeding when district courts are called upon to review due process and

5    confrontation clause challenges.

6           [T]he question whether a particular proceeding is critical to the
            outcome of a trial is not the proper inquiry in determining whether
7           the Confrontation Clause has been violated.  The appropriate
            question is whether there has been any interference with the
8           defendant's opportunity for effective cross-examination. . . .  Of
            course, the fact that a stage in the proceeding is critical to the
9           outcome of a trial may be relevant to due process concerns.  Even
            in that context, however, the question is not simply whether, "but
10          for" the outcome of the proceeding, the defendant would have
            avoided conviction, but whether the defendant's presence at the
11          proceeding would have contributed to the defendant's opportunity
            to defend himself against the charges."

12

13   <u>Kentucky v. Stincer</u>, 482 U.S. 730, 744 n.17 (1987)(held that exclusion of defendant from *in*

14   *camera* hearing to determine two child witnesses' competency was not a denial of the

15   defendant's rights under the Confrontation Clause or the Due Process clause because no

16   substantive questions concerning the case were asked at the hearing and defendant gave no

17   evidence demonstrating his presence at the hearing would have been useful in ensuring a more

18   reliable determination of competency.)

19          The Supreme Court has also addressed the question of whether an *in camera*

20   review of confidential documents was sufficient to comport with Sixth Amendment

21   confrontation clause demands in a different context.  In <u>Ritchie</u>, defense counsel was denied

22   access to confidential child abuse files and sought Supreme Court intervention to gain access.

23   <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 55-61 (1987), <u>limited on other grounds by</u> <u>Jefferson City of</u>

24   <u>Tarrant</u>, 522 U.S. 75 (1997).  A majority of the Court held there was no constitutional right,

25   whether under a due process or confrontation clause analysis, to have confidential child

26   protective service reports made available to defense counsel, unless and until the materiality and

27

exculpatory nature of the information could be established through *in camera* inspection or otherwise.  Ritchie, 480 U.S. at 55-61.[13]

> In a dissent, however, Justice Brennan, with whom Justice Marshal joined, stated,

> By contrast, Jencks, informed by confrontation and cross-examination concerns, insisted that defense counsel, not the court, perform such an evaluation, "[b]ecause only the defense is adequately equpped to determine the effective use for the purpose of discrediting the Government's witness and thereby furthering the accused's defense." Jencks [v. United States, 353 U.S. 657, 668-669 (1957)].  Therefore, while Confrontation Clause and due process analysis may in some cases be congruent, the Confrontation Clause has independent significance in protecting against infringements on the right to cross-examination.

Ritchie, 480 U.S. at 72 (Brennan, J. dissenting).

> Here, as noted above, it is quite difficult for defense counsel to challenge a warrant when the judge refuses to disclose any of the facts underlying the probable cause decision.  The judge conceded on the record that "there really isn't much argument on the traversal because I've given you nothing and there's really nothing you can traverse.  You can't put [on] much evidence because you don't have much of a clue as to the nature of the comments the CI made."  (RT 27.)  Allowing defense counsel to draft questions in a vacuum cannot comport with due process.  The Fourth Amendment protects homes against unlawful searches and ensures criminal defendants have a fair opportunity to challenge probable cause as well as the underlying facts in support thereof.  Petitioner could not challenge the finding of probable cause or the underlying facts relied on to establish probable cause, because neither petitioner nor his counsel were allowed to see the information they needed to rebut.  This also deprived counsel of an opportunity to test the reliability of the informant.

/////

---

[13]  Ritchie did acknowledge, and enforce, a Fifth Amendment due process right to discover information which is both material and exculpatory.  Id., 480 U.S. at 57-61 (citing *inter alia* Brady v. Maryland, 373 U.S. 83 (1963)).  Petitioner here does not contend that the information he seeks is Brady material.

1    The reasoning in the unpublished decision in United States v. Johnson, 65

2    Fed.Appx. 628, 630 (9th Cir. 2003) addressing a motion under 28 U.S.C. § 2255, does not

3    persuade this court otherwise.  In Johnson, the Circuit found there had been no denial of the right

4    to counsel to exclude counsel from two pre-trial in camera hearings regarding disclosure of the

5    government's confidential informants.  Id.  The court found that the in camera hearings were not

6    critical stages of the criminal proceedings, counsel was allowed to submit a list of questions for

7    the judge to ask, and counsel had a chance to cross-examine the informants before trial.  Id.

8    Here, however, counsel and petitioner were barred from in camera hearings

9    addressing evidence crucial to the suppression motion, which is a critical stage of the

10   proceedings.  The one informant was the sole source of probable cause on which the search

11   warrant was based.  The CI's identity was not revealed even to the judge, so it was unlikely the

12   petitioner would have been allowed to cross-examine the informant at trial.

13   Although both Johnson's counsel and petitioner's counsel "forcefully objected to

14   the in camera proceeding[s]," (id. at 630), unlike Johnson's counsel, who "was obviously

15   knowledgeable about the nature of the proceeding, (id.), petitioner's counsel objected that she did

16   not have enough information on which to traverse the warrant.  Counsel's claim is substantiated

17   by the judge's unwillingness to unseal any of the facts underlying the finding of probable cause,

18   and his concession that counsel had nothing on which to traverse the warrant.  Thus, counsel had

19   nothing on which to formulate pertinent or probing questions.

20   This court finds that the presence of petitioner or his counsel at the in camera

21   hearings would have contributed to petitioner's opportunity to defend himself against the charges

22   because defense counsel would have read the police reports and other relevant discovery, would

23   have performed investigations and tailored her cross-examination to the facts underlying the

24   issue of probable cause, and would have subjected the prosecution's case to the adversarial

25   testing as required by the Constitution.

26   /////

1    Thus, this court finds petitioner was prejudiced by his inability to view the

2  information or attend the hearing, either personally or through counsel, because it unfairly

3  deprived him of his opportunity to subject the prosecution's case to adversarial testing, his right

4  to present a defense and his right to put on a defense, all in violation of the Fourteenth

5  Amendment.

6    In light of the above, this court finds that the state court's decision that

7  petitioner's due process rights were not violated was contrary to, or an unreasonable application

8  of, clearly established federal law.

9    c.  <u>Denial of Right to Public Trial</u>

10    Finally, petitioner contends that the <u>Hobbs</u> procedure violated petitioner's right to

11  a public trial guaranteed under the Sixth Amendment.  Respondents point out that the state court

12  of appeal deemed this claim waived because counsel failed to specifically argue these

13  constitutional grounds in the trial court.  Thus, respondents contend, this claim is barred because

14  disposition of this claim rests on a state law ground that is independent of federal law and

15  adequate to support the judgment.

16    As a general rule, a federal habeas court "'will not review a question of federal

17  law decided by a state court if the decision of that court rests on a state law ground that is

18  independent of the federal question and adequate to support the judgment.'"  <u>Calderon v. United</u>

19  <u>States District Court (Bean)</u>, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting <u>Coleman v. Thompson</u>,

20  501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is "firmly established and

21  regularly followed."  <u>Id.</u> at 1129; <u>Bennett v. Mueller</u>, 322 F. 3d 573, 583 (9th Cir. 2003) ("[t]o be

22  deemed adequate, the state law ground for decision must be well-established and consistently

23  applied").  A rule is inadequate if petitioner had no notice of it at the time of his default.  <u>Ford v.</u>

24  <u>Georgia</u>, 498 U.S. 411, 423-25 (1991).  The state rule must also be "independent" in that it is not

25  "interwoven with the federal law."  <u>Park v. California</u>, 202 F.3d 1146, 1152 (9th Cir. 2000).

26  Even if the state rule is independent and adequate, the claims may be heard if the petitioner can

1  show:  (1) "cause for the default and actual prejudice as a result of the alleged violation of federal

2  law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of

3  justice."  Coleman, 501 U.S. at 750.  The fact that a state court reaches the merits of a federal

4  claim in an alternative holding does not defeat the procedural bar.  Harris v. Reed, 489 U.S. 255,

5  264 n.10 (1989).  However, "in habeas, if the decision of the last state court to which the

6  petitioner presented his federal claims fairly appeared to rest primarily on resolution of those

7  claims, or to be interwoven with those claims, and did not clearly and expressly rely on an

8  independent and adequate state ground, a federal court may address the petition."  Coleman, 501

9  U.S. at 735.

10         Petitioner does not contest respondents' assertion that his trial counsel did not

11  raise a contemporaneous constitutional objection to the Hobbs procedure on the denial of public

12  trial ground.  The state court of appeal clearly and expressly held that the issue was waived on

13  appeal because of counsel's failure to object on this ground.  (People v. Moeller, slip op. at 6-7.)

14  The court of appeal also rejected counsel's futility argument, finding that because Hobbs did not

15  address Sixth Amendment or public trial concerns, it would not have been futile to raise those

16  grounds with the trial court.  (People v. Moeller, slip op. at 7-8.)

17         Petitioner has failed to demonstrate that California's contemporaneous-objection

18  rule is unclear, inconsistently applied or not well-established, either as a general rule or as

19  applied to him.  See Melendez v. Pliler, 288 F.3d 1120, 1124 (9th Cir. 2002).  Petitioner's claim

20  is therefore procedurally barred.  See Coleman, 501 U.S. at 747; Harris, 489 U.S. at 264 n.10.

21  Petitioner has also failed to demonstrate that there was cause for his procedural default or that a

22  miscarriage of justice would result absent review.  See Coleman, 501 U.S. at 748; Vansickel v.

23  White, 166 F.3d 953, 957-58 (9th Cir. 1999).  This court is therefore precluded from considering

24  the merits of this claim.

25  /////

26  /////

31

1        In accordance with the above, IT IS HEREBY RECOMMENDED that

2  petitioner's application for a writ of habeas corpus be granted on the first two claims and denied

3  in all other respects.

4        These findings and recommendations are submitted to the United States District

5  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days

6  after being served with these findings and recommendations, any party may file written

7  objections with the court and serve a copy on all parties.  Such a document should be captioned

8  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

9  failure to file objections within the specified time may waive the right to appeal the District

10 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11 DATED:  February 19, 2009.

12

13                                    UNITED STATES MAGISTRATE JUDGE

14

15 /001; moel2351.157

16

17

18

19

20

21

22

23

24

25

26